Ilslev, .T.
In April, 1859, a suit was brought by Amanda Bell and husband, and others, the heirs of Sarah Cleveland, first wife of Samuel Lee, against their father, Samuel Lee, for their mother’s interest in the community, theretofore existing between the said spouses, aud for a par-, tition, etc.
It whs filed, 'and, numbered 2767.
*249 Amanda Davis, tutrix, and her husband, co-tutor of the minors, Sarah E. and Leroy W. Lee, minor children of James W. Lee, the son of Samuel Lee, who are the plaintiffs in this suit, were some of the petitioners in the suit, No. 2767.
That suit terminated by compromise, as to these heirs, as is charged m the petition, and which the defendant in that suit pleaded in his answer as follows:
“ That on the 8th day of February, 1861, he compromised, and purchased all the interest and claims of the heirs of James Lee, deceased, in said estates, including rent-i, revenues, rights and credits; that on the 31st May, 1861, the family meeting, repi’esentiug the widow and only heirs of said James Lee, deceased, ratified and confirmed said contract, compromise and purchase, which was duly homologated. The last aforesaid purchases and compromises were such that the respondent agreed to pay each of the heirs $8.CK)0; with eight per cent, interest per annum, from the dates of the respective purchases and compromises.”
The transaction referred to contains the following statement: “He, Samuel Lee, agrees that to end litigation and strife in the family relations, that judgment be rendered against him for $8,010, and interest, etc., for the plaintiffs’ undivided interest in the estates of Sarah Lee, Thomas J. Lee and Martin VauBnren Lee, all deceased; and it concludes, that it is specially understood that judgment of $8,000, and interest, are in Xud satisfaction of the entire demand of the petition of plaintiffs.”
It is signed Sam/id Lee, J. W. Davis and Amanda Davis.
The present suit is on the transaction, and the plaintiffs herein claim from the defendant the sum of §8,000 and interest, as stipulated therein.
The defendant, in his answer, pleads payment and failure of consideration, as to the negroes and their hire, which formed a part of the interest of the heirs. We do not, as does the plaintiffs’ counsel, deem these pleas inconsistent. Myles v. Miller, 4 N. S. 492.
Judgment was rendered in the court below against the defendant and in favor of the plaintiff, for the amount claimed, and the defendant has appealed.
The defendant makes in this coixrt but two points. He contends—
1. That he has paid, and discharged the obligation sued upon; and
2. That the transaction was in reality a sale of lands, slaves and personal property appertaining to the Succession of Mrs. Sarah Lee, deceased; that by the act of transfer, the plaintiffs sold to the defendants their share in and' to one undivided fifth of said slaves; that all the slaves have been emancipated by the sovereign power, and although in warranty, is expressly stated. Yet, by law, the plaintiffs are bound in warranty against the eviction of the property defendant has suffered from the emancipation by the government, and that the plaintiffs are overpaid.
The evidence shows that the plaintiffs’ counsel had received in the treasury notes of the so-called Confederate States §5,604 10.
The evidence to prove this was objected to, on the ground that the plaintiffs could not show their own turpitude. The exception was properly overruled. The object of the testimony was to show that no legal payment in money had been made to their attorneys, as Confederate notes were not money, as this Court has had occasion more than once to *250 decide, and an attorney’s receipt is not binding on his client unless he actually received money.
The decision in the case of Railey & Campbell v. William Bagley & Co., 19 An., p. 172, is conclusive on this point.
Had the ■ tutors of the minors received these Confederate notes, or been made aware of the receipt of them by the attorney and not objected, the case might have been different, but we do not find any proof of such .facts.
What was the nature of the contract entered into? Was it not a “lumping settlement,” as the plaintiffs’ counsel terms it, “ to end litigation and strife in the family relations,” and made for the purpose avowed on its face? or was it an ordinary sale imparting a warranty? or was it not a .mere relinquishment of the multifarious rights contained in the demand, such as succession, rights, rents, moneys, etc?
So far, it might be assimilated to a sale, but it was a contract embraced in the class do, ut facias, and not in the class do, ut des, to which sales pertain.
In transactions, as they are defined in our code, and in the Roman law, there is, from the nature of such contracts, something aleatory. C. C. 3038, L. 1, f. f., de Transact; L. 2, etL. ult cod, cod tit. “The objeot of a transaction is to prevent or put an end to a law suit, adjust the differences of the parties by mutual consent in the manner in which they agree on, and which each of them prefers to the hope of gaining, balanced by the danger of losing.”
Or, as Delvincourt has it: “ Dans une transaction, tout est oorrélatif. On peut supposer que les conditions de la transaction n’ont été acceptées par l’une ou l’autre des parties, que parcequ’elies out espéré étre quittes de toute discussion, prévue et imprévue.”
As regards warranty resulting from transactions, Duranton says: “Si l’une des parties est évincée par un tiers de quelques-uns des objets que l’autre lui a livrés, transactiones causa,” pour avoir ou garder ceux qui faisaient la matifere de la contestation, le Droit romain décidait, daus ce cas, qu’il n’y a pas lieu pour cela a resoinderla transaction et aressusciter le proces, mais seulement lieu á une action en garantie pour cause d’éviction, et qu’il n’y avait méme lieu a aucune action en garantie (a moins que la garantie fi’eht été promisé) si c’etait l’objet méme sur lequel on avait transigé qui a été évincé á la partie á laquelle il était demeuré par l’effet de la transaction, attehdu que dans ce cas cette partie était censée avoir voulu prendre sur elle les risques de l’exécution et l’autre partie avoir seulement voulu renoncer á ses prétentions. Telle est la double décision de Dioclétien et de Maximien dans la loi 33 du Code de Transact, et elle nous parait si juste que nous n’hésitons pas a penser qu’elle devrait étre suivie dans notre droit; sauf l’effet des conventions particuliéres, portées dans la transaction dans la prévoyance de l’cviction.
This doctrine seems a rational and sound one, but apart from it, we think, from the tenor of the agreement itself, it was the intention of the parties to it,'that the plaintiffs in the shit, which was terniimited by the transaction, merely divested themseÍY§9 £>i the rights, whateYBl' they *251 were, asserted by them, as a mere quitclaim ; and that no obligation whatever of -warranty resulted therefrom. 17 La. 308.
The rights of the plaintiffs in the unliquidated succession and community were mere droits successi/s, and although inventories had been made, the debts and charges might have exceeded the property; and, on this point, Merlin says:
“Lorsque la vente est nommément des droits suceessifs de l’hérédité, le vendeur ést de plein droit garant que cette hérédité lui appartient a moins qn’il n’en soit autrement expliqué. Mais il h’est pas garant de la moindre, ni de la plus grande étendue de ces droits, il est censé ne vendre que ce qni se trouve dans la succession, de sorte que s’il ne se trouve ríen, la vente n’en demeure pas moins ce qu’elle était. C’est ce qu’établissent les lois du Digeste, titre de d’Hereditate, vol. Actione Vendita.” Art. 2620, C.C.-
The transaction has, between the parties to it, the authority of the thing adjudged. Art. C. C., 3045. And as the construction which we put upon it, that it amounted, on the part of the plaintiffs, to nothing but a cession of rights or pretensions, we think the judgment of the District Court should be affirmed.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed, at the costs of the appellant.